UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

IRA MICHAEL CRANSHAW,

                Petitioner,

v.

JASON BENNETT,

                Respondent.

CASE NO. 3:23-CV-5140-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: July 14, 2023

    The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner Ira Michael Cranshaw filed his federal habeas Petition ("Petition"), pursuant to 28 U.S.C. § 2254, seeking relief from his state court convictions and sentence. *See* Dkt. 6. The Court concludes Petitioner failed to properly exhaust his state court remedies as to the sole ground raised in the Petition. Because Petitioner is barred from pursuing state court remedies, Petitioner has procedurally defaulted on the ground raised in the Petition. Therefore, the undersigned recommends the Petition be denied and a certificate of appealability not be issued.

## I. Background

### A. Factual Background

The Court of Appeals of the State of Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

I. The Rapes

A. Rape of S.H.

On November 23, 1998, S.H. went with her girlfriend to a nightclub. There, she saw another friend, Avery Garner, who was with Ira Michael Cranshaw. S.H. knew of Cranshaw because he had dated one of her friends. After being introduced, she and Cranshaw talked briefly. When the nightclub closed around 1:30 a.m., Garner offered to give S.H. a ride home.

S.H. left with Garner, Cranshaw, and another man named Turtle [Fn. S.H.'s girlfriend went home alone.] Along the way, Garner stopped at his apartment, where he, S.H., and Cranshaw went inside, along with some others who had been following them from the nightclub. S.H. waited just inside the apartment by the front door, Garner went back to his bedroom, and the others went into the kitchen to smoke marijuana. When Garner did not return as expected, S.H. went into the bedroom and found him passed out on his bed.

Cranshaw offered to give S.H. and Turtle a ride home. But when everyone prepared to leave, Cranshaw told Turtle to ride home with the others. Everyone else left, leaving S.H. alone in the apartment with Cranshaw and Garner, who remained passed out in his bedroom. Cranshaw told S.H. to give him a kiss; she said, 'No,' because she did not really know or like him. Cranshaw then told S.H. that if she did not kiss him, he would 'f* *k' her.

When S.H. stood up to leave, Cranshaw grabbed her, slammed her back to the floor, and began choking her while he unfastened her pants. While continuing to choke her, Cranshaw forced S.H. to remove her pants, threatened her with anal penetration, told her to choose whether she wanted to have vaginal or anal sex, warned her that she was going to 'get it anyway,' and if she did not choose, he would. S.H. responded that she did not want to engage in any sex and that she did not want him to penetrate her anally. At that point, Cranshaw began forcefully to penetrate her vaginally, and then threatened to kill her. During the rape, Cranshaw repeatedly flipped S.H. onto her hands and knees so that he could penetrate her from behind.

Throughout the attack, S.H. cried hysterically, repeatedly told Cranshaw, 'No,' and told him that what he was doing was wrong. Angered, Cranshaw began penetrating

S.H. with such force that his body pushed her across the carpet, 'ripp{ing} up' her knees.

After the rapes, Cranshaw allowed S.H. to dress. S.H. said she could walk home, but Cranshaw told her, 'No,' and that he would drive her home. Cranshaw told S.H. that if she tried to run, he would take her behind the apartment garages, rape her again, and then kill her. They walked out of the apartment. When they reached the parking lot, Cranshaw grabbed S.H.'s hair, took her back inside the apartment, and told her to take her clothes off.

When S.H. began to cry, Cranshaw told her that he was not going to hurt her. Then he told her to get in the shower and to 'wash the sex off.' Report of Proceedings (RP) at 1413. After S.H. showered, Cranshaw digitally penetrated her vaginally; he told her she 'still smelled like sex,' to 'take the towel and get it wet in the sink, and to stick that inside {her vagina} and wash out really good.' RP at 1415. Cranshaw then put S.H. in the car, told her 'not to move' and to shut the door, and drove her home. When they arrived at S.H.'s house, Cranshaw told her that if she went 'to the police or anything, that he knew where {she} lived and he would come back and he would kill {her} and {her} daughter.' RP at 1417.

B. Rape of B.B.

On January 25, 1999, approximately eight weeks later, Cranshaw's second victim, B.B., used her boyfriend's truck to pick up two friends, Richard Aspuria and Randy Shrimplin, to go bowling. They arrived at the bowling alley around 10:00 p.m.

Bowling in adjacent lanes, B.B. met Cranshaw, and asked if he knew how to get marijuana for her. Cranshaw responded that he had some in the trunk of his car. B.B. accompanied Cranshaw to his car, but there was no marijuana. Cranshaw then said he had marijuana at his house, so they planned to go there later to get the marijuana and then continue on to a party at another house with the people with whom Cranshaw had been bowling.

Around midnight, B.B. drove her friends home and then returned to the bowling alley to meet Cranshaw. Cranshaw agreed to sell B.B. some marijuana, so she followed him home in her boyfriend's truck.

When they arrived at Cranshaw's house, B.B. followed him into his bedroom. Cranshaw forcefully pushed B.B. on to the bed, got on top of her, pinned her down, and tried to kiss her. B.B. told him, 'I don't want to do this.' Cranshaw then blindfolded B.B., 'yanked' her pants off, and said, 'I'm gonna f* *k you, b* *ch.' In an attempt to prevent him from raping her, B.B. told Cranshaw that she had herpes, to which he responded, 'I should kill you right now for—just for having that.' RP at 521.

REPORT AND RECOMMENDATION - 3

Saying he was going to kill B.B., Cranshaw raped her repeatedly in multiple orifices. According to B.B., Cranshaw began the attack with B.B. on her back on the bed while he raped her vaginally. Then he positioned her on her hands and knees and raped her anally from behind. Next, he penetrated her orally and then again vaginally, ejaculating inside her. According to Cranshaw, who testified at the first trial: (1) he vaginally penetrated B.B. while she was lying on her back; (2) then B.B. turned over and he penetrated her anally and vaginally; (3) next, he 'had her turn back over' and culminated in vaginal penetration; but (4) they did not have oral sex.

Afterwards, Cranshaw took B.B. into the bathroom and made her take a shower to clean his semen out of her. Cranshaw brought B.B. her pants, blindfolded her again, put her in her boyfriend's truck, told her he was going to drive her to Mt. Rainier and kill her, saying, 'I've done it before.' He then said, 'Plead for your life, b* *ch.' B.B. then pled with Cranshaw, telling him that her father was dying, that she was a good person, and that she would not say anything about what happened. Cranshaw responded, 'Well I'm just going to kill you.' RP at 547. About 15 or 20 minutes into the ride, B.B. heard other cars around the truck and jumped out. She remembered nothing after this point until she awoke at the hospital.

II. Arrest

Early in the morning of January 26, 1999, Michael Gibbons was driving to work on State Route 7 when he saw B.B. 'jump' from the truck. Thinking she was dead, Gibbons followed the truck, obtained the license number, and observed that the driver was a dark skinned male, whose facial features he could not distinguish. Gibbons told police what he had seen. A license check revealed that the truck was registered to Eric Vossler, B.B.'s boyfriend. Later in the day, a Pierce County sheriff's deputy found the truck.

During the investigation of the rapes and attempted murder, police isolated Cranshaw as a primary suspect and obtained an arrest warrant. Police identified Cranshaw's vehicle at a large funeral gathering and took Cranshaw into custody after making a traffic stop and confirming his identity. Following Cranshaw's arrest, the police searched his car and found marijuana-filled cigars, or 'blundts,' in Cranshaw's backpack.

Detective Adamson read Cranshaw his Miranda rights, [Fn. omitted] which Cranshaw waived. Agreeing to an interview, Cranshaw confirmed he had been at the bowling alley on January 25, 1999. When informed of the rape and other charges against him, Cranshaw became visibly shaken, commenting that he was going to prison for a long time.

During a search of Cranshaw's residence, in April 1999, police found B.B.'s black purse and a hair 'scrunchy.' Police also seized marijuana, drug paraphernalia, cash,

REPORT AND RECOMMENDATION - 4

an empty gun holster, and ammunition from the bedrooms of Cranshaw's housemates.

III. First Trial and Appeal

The State charged Cranshaw with (1) one count of first degree attempted murder, three counts of first degree rape, one count of first degree kidnapping, and one count of felony harassment perpetrated against B.B.; and (2) two counts of first degree rape, one count of first degree kidnapping and one count of felony harassment perpetrated against S.H.

At his first trial, Cranshaw testified that he had had sex with B.B., but he claimed it was consensual and he never threatened her. He testified that after they had sex, (1) he took a shower, (2) then B.B. took a shower, and left in her truck, and (3) that was the last time he saw her. Cranshaw said he then went to pick up his girlfriend, Shannon Munford. Munford testified that Cranshaw picked her up at her girlfriend's house around 3:30 a.m., after which they drove to his house and went to bed.

A jury convicted Cranshaw of kidnapping, raping, and harassing both S.H. and B.B. The jury also convicted him of attempted murder of B.B.

Cranshaw appealed. We affirmed his three convictions for attacking S.H. We reversed his six convictions for attacking B.B. and remanded for retrial.[Fn. omitted].

IV. Retrial on Remand

On remand for retrial of the charges for attacking B.B., Cranshaw first appeared in court on November 5, 2002. The court set trial for December 30, 2002.

. . . .

The jury convicted Cranshaw of three counts of first degree rape, one count of first degree kidnapping, and one count of felony harassment; it acquitted him of attempted murder. At sentencing, the court (1) dismissed the kidnapping count as having merged with the rapes, and (2) found the three rapes to have been the same criminal conduct for sentencing purposes under RCW 9.94A.400(1)(a). Cranshaw appeals.

*State v. Crenshaw*, 130 Wash. App. 1041 (2005).

REPORT AND RECOMMENDATION - 5

B. Procedural Background

1. *Direct Appeal*

Petitioner challenged his Pierce County Superior Court ("trial court") convictions and sentence on direct appeal. *See State v. Cranshaw*, 113 Wash. App. 1013 (2002). The state court of appeals reversed Petitioner's convictions of the kidnapping, rape, attempted murder and harassment of B.B., affirmed his convictions for the rapes and harassment of S.H., and remanded for resentencing for the convictions of kidnapping and rape of S.H. because the counts merged. *Id*. Petitioner did not seek discretionary reviewed and was resentenced on the counts involving S.H. in December of 2002. *See* Dkt. 11-1 (Exhibits 2, 5).

As stated above, Petitioner was re-tried for the counts related to B.B. *See* Dkt. 11-1 (Exhibit 3). The jury convicted Petitioner of three counts of rape in the first degree, one count of first degree kidnapping, and one count of felony harassment as to B.B. *See id*. Petitioner appealed his convictions to the state court of appeals. *See State v. Cranshaw*, 130 Wash. App. 1041. The state court of appeals affirmed his convictions and sentence. *Id*. The Washington State Supreme Court ("state supreme court") denied discretionary review on September 6, 2006, and issued its mandate on September 21, 2006. Dkt. 11-1 (Exhibit 6); *see also* Dkt. 10.

2. *Personal Restraint Petitions*

On June 29, 2007, Petitioner filed a personal restraint petition ("PRP") seeking state post-conviction relief. *See* Dkt. 11-1 (Exhibit 7). The state court of appeals dismissed the PRP. *Id*. Petitioner sought discretionary review from the state supreme court, which was denied. *Id*. The state court of appeals issued the certificate of finality on May 21, 2009. *Id*.

Petitioner filed CrR 7.8(b) motion on December 12, 2018. Dkt. 11-1 (Exhibit 8). The trial court transferred the motion to the state court of appeals for consideration as a PRP. *Id*. (Exhibit

9). The state court of appeals dismissed the PRP because Petitioner failed to pay the filing fee. *Id*. (Exhibit 10). The certificate of finality was issued on April 9, 2019. *Id*. (Exhibit 11).

On May 20, 2019, Petitioner filed his third PRP. Dkt. 11-1 (Exhibit 12). The state court of appeals dismissed the PRP as time-barred. Dkt. 11-2 (Exhibit 15). Petitioner sought discretionary review from the state supreme court. *Id*. (Exhibit 16). The state supreme court granted Petitioner's motion regarding a sentencing issue only and the matter was remanded to the trial court for resentencing. *Id*. (Exhibit 20). The state supreme court issued the certificate of finality on December 8, 2020. *Id*. (Exhibit 21). Petitioner was resentenced on March 4, 2022. Dkt. 11-1 (Exhibit 4).

Petitioner filed a CrR 7.8 motion on June 14, 2022. Dkt. 11-2 (Exhibit 22). The motion was transferred to the state court of appeals to be considered as a PRP. *Id*. The state court of appeals dismissed the PRP as time-barred on November 8, 2022. *Id*. (Exhibit 23). Petitioner filed a motion for discretionary review with the state supreme court. *Id*. (Exhibit 24). A state supreme court commissioner denied the motion. *Id*. (Exhibit 25). The state supreme court issued the certificate of finality on March 1, 2023. *Id*. (Exhibit 26).

      3.   *Federal Petition*

On February 22, 2023, Petitioner filed his Petition raising one ground for relief. Dkts. 1, 6. Petitioner asserts his due process rights were violated when Petitioner was assigned the burden of proving consent as a defense to a charge of rape by forcible compulsion. Dkt. 6 at 5. On May 1, 2023, Respondent filed, and served on Petitioner, an Answer. Dkt. 10. In the Answer, Respondent asserted Petitioner failed to exhaust the sole ground raised in the Petition and this ground is now barred from federal review. *Id*. Petitioner filed a Traverse on May 17, 2023. Dkt. 12.

## II. Discussion

Respondent maintains Petitioner failed to exhaust the sole ground raised in the Petition and is procedurally barred from federal review of this ground. Dkt. 10.

### A. Exhaustion

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state supreme court even though the state court did not reach the argument on the merits). It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (citing *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). Petitioner bears the burden of proving he has exhausted available state remedies, and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

Respondent contends Petitioner failed to raise his claim as a federal constitutional violation before the state court. Dkt. 10 at 11-12. As stated above, "for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray*, 518 U.S. 162–63. Vague references to broad constitutional principles such as due process, equal protection and a fair trial do not satisfy the exhaustion requirement. *Id*. at 162; *Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir.1999); *Gatlin v. Madding,* 189 F.3d 882, 888 (9th Cir. 1999). Even where the petitioner argues an error deprived him of a "fair trial" or the "right to present a defense", unless the petitioner expressly states he is alleging a specific federal constitutional violation, the petitioner has not properly exhausted the claim. *Johnson v. Zenon,* 88 F.3d 828, 830–31 (9th Cir. 1996). Moreover, the fact that a state law claim was "essentially the same" as the claim subsequently asserted in federal court does not satisfy the exhaustion requirement. *Id.* at 830. Even if the case applied a standard similar to the federal standard, does not suffice to apprise the Washington courts of a federal claim. *Hiivala,* 195 F.3d at 1106–07.

In Ground 1, Petitioner alleges his due process rights were violated when he was assigned the burden of proving consent as a defense to a charge of rape by forcible compulsion. Dkt. 6 at 5. Petitioner states that, at trial, he presented a defense of consent as to the charges of rape in the second degree by forcible compulsion. *Id*. He contends that he was required to prove consent, rather than the prosecutor having to prove lack of consent as part of the elements of forcible compulsion. *Id*.

In his 2022 PRP, Petitioner alleged, similar to Ground 1, that "a defendant cannot be burdened with proving consent by a preponderance of the evidence, as the burden must remain on The (sic) State to prove forcible compulsion beyond a reasonable doubt. It's been held unconstitutional[.]" Dkt. 11-2 at 106 (capitalization and punctuation in original). Petitioner cited

1 | *State v. W.R.*, 181 Wn.2d 757 (2014). *Id*. Petitioner cited to only state law and did not raise this
2 | claim as a federal constitutional violation. *See id*. Petitioner's use of the term "unconstitutional"
3 | is not sufficient to put the state courts on notice that he is raising a specific federal constitutional
4 | violation. *See Johnson,* 88 F.3d at 830–31. As Petitioner did not raise Ground 1 as a federal
5 | constitutional claim through each stage of direct review or in a PRP, Ground 1 was not properly
6 | exhausted. *See Casey*, 386 F.3d at 914 (internal quotations omitted) ("If a petitioner fails to alert
7 | the state court to the fact that he is raising a federal constitutional claim, his federal claim is
8 | unexhausted regardless of its similarity to the issues raised in state court."); *Smith v. McKenna*,
9 | 2009 WL 1181261, at *9 (W.D. Wash. Apr. 30, 2009) (finding the petitioner did not exhaust
10 | when he made no reference to any specific federal constitutional guarantee or federal case law in
11 | support of the relief he sought).

12 |   B.  Procedural Default

13 | Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*,
14 | 290 F.3d 1223, 1230 (9th Cir. 2002). The procedural default rule bars consideration of a federal
15 | claim when it is clear the state court has been presented with the federal claim but declined to
16 | reach the issue for procedural reasons or it is clear the state court would hold the claim
17 | procedurally barred. *Id.* at 1230-31 (citations omitted). If a state procedural rule would now
18 | preclude the petitioner from raising his claim at the state level, the claim is considered
19 | "procedurally defaulted" and the federal courts are barred from reviewing the petition on the
20 | merits. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *O'Sullivan*, 526 U.S. at 845.

21 | Here, the state courts expressly declined to consider Ground 1, the sole ground raised in
22 | the Petition, because Petitioner's 2022 PRP was time barred under a state statute. *See* Dkt. 11-2
23 | (Exhibits 23, 25). The state court of appeals and state supreme court relied on Revised Code of
24 | Washington ("RCW") 10.73.090 to find the PRP was time-barred. *Id*. Washington State imposes

a one-year statute of limitations on filing a PRP or other post-conviction challenges. RCW §10.73.090. The state courts, and this Court, find that the time to file a petition or motion for post-conviction relief has expired. *See* Dkt. 11-2 (Exhibits 23, 25); RCW 10.73.090(1), (3)(b). As the one-year statute of limitations has passed, Petitioner is barred from filing a subsequent PRP. *See* RCW 10.73.090(1); *see also Shumway v. Payne*, 223 F.3d 982, 988 n. 22 (9th Cir. 2000) (RCW 10.73.090 has been found by the Ninth Circuit to be an independent and adequate state law barring federal habeas review); *Williams v. Ryan*, 2019 WL 4750235, at *3 (D. Ariz. Sept. 30, 2019) (citing *Ylst v. Nunnemaker,* 501 U.S. 797, 801 (1991)) ("If a state court expressly applied a procedural bar, and that state procedural bar is both independent and adequate, a federal habeas court cannot review the claim on the merits.").

Further, under Washington State law, the state court of appeals will not consider a second or successive PRP unless the petitioner certifies he has not filed a previous petition on similar grounds and shows good cause as to why he did not raise the grounds in the previous PRP. *See* RCW 10.73.140. Petitioner has not presented facts which could show good cause for his failure to raise Ground 1 as a federal constitutional violation in his 2022 PRP. Therefore, the ground raised in the Petition is also subject to an implied procedural bar because the ground would be "prohibited by an independent, adequate, and mandatory rule of state procedure, R.C.W. §10.73.140, making a return to state court futile." *See Bolar v. Luna*, 2007 WL 1103933, at *11 (W.D. Wash. April 10, 2007).

Petitioner would be precluded from asserting the ground raised in the Petition in the state courts; therefore, the ground raised in the Petition is procedurally defaulted in federal court. *See Coleman*, 501 U.S. at 731-32, 735 n.1; *Casey*, 386 F.3d at 920; *Eisermann v. Penarosa*, 33 F.Supp.2d 1269, 1274 (D. Haw. 1999) ("[I]f a petitioner has never raised his federal claim to the highest state court available and is now barred from doing so by a state procedural rule,

REPORT AND RECOMMENDATION - 11

exhaustion is satisfied because no state remedy remains available, but the petitioner has procedurally defaulted on his claim.").

### C. Overcoming Procedural Default

The procedural default will be excused and a petitioner will be entitled to federal habeas corpus review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. at 750). To establish "cause," a petitioner must show some objective factor external to the defense prevented him from complying with the state's procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause and prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Murray,* 477 U.S. at 495–96. To demonstrate he suffered a fundamental miscarriage of justice, viewing all the evidence in light of new reliable evidence, the petitioner must show "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Here, Petitioner asserts he need not demonstrate cause for the default because he has not defaulted. Dkt. 12. He also contends the structural error from the state shifting the burden of proof caused actual prejudice and declining review would result in a fundamental miscarriage of

justice. *Id*. Petitioner has not shown some objective factor external to his defense prevented him from complying with the State's procedural bar rule. Petitioner also fails to make a sufficient showing that the alleged trial error worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions, and thus has not shown prejudice. Furthermore, Petitioner has not provided new, reliable evidence showing he is actually innocent and, therefore, this is not the kind of extraordinary instance where this Court should review the claim despite the absence of a showing of cause.

D. Conclusion

In sum, there is no evidence Petitioner exhausted the state court remedies to the highest state court for Ground 1. As Petitioner bears the burden of proving he exhausted the available state court remedies and as there is no evidence showing Petitioner gave the state court a full and fair opportunity to determine if a federal constitutional violation occurred, Ground 1 was not properly exhausted. Moreover, Ground 1 is procedurally defaulted. As Petitioner has not overcome the procedural default, the Court recommends the Petition be dismissed. *See Casey*, 386 F.3d at 920-21.

III. **Evidentiary Hearing**

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id*. at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

court is not required to hold an evidentiary hearing." *Id*. The Court finds it is not necessary to hold an evidentiary hearing in this case because, as discussed in this Report and Recommendation, the ground raised in the Petition may be resolved on the existing state court record.

### IV.   Certificate of Appealability

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or would conclude the issues presented in the Petition should proceed further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

### V.   Conclusion

For the above stated reasons, the Court concludes Petitioner failed to exhaust Ground 1, the sole ground raised in the Petition, and this ground is procedurally defaulted. The Court also finds an evidentiary hearing is not necessary. Therefore, the Court recommends the Petition be dismissed and a certificate of appealability not be issued.

As the Court finds a certificate of appealability should not be issued and that the Petition should not proceed further, the Court recommends any request for *in forma pauperis* on appeal be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on July 14, 2023, as noted in the caption.

Dated this 27th day of June, 2023.

David W. Christel
Chief United States Magistrate Judge